UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 93-187-CR-GOLD/TURNOFF

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

WOLFGANG VON SCHLIEFFEN,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court[1] upon a request for attorney's fees and costs pursuant to the Hyde Amendment, 18 U.S.C. § 3006A, by the Estate of Wolfgang Von Schlieffen **[D.E. unknown]**, and a related Order Denying Motion for Reconsideration entered by the Honorable Alan S. Gold. **[D.E. 373]**. In the Order, Judge Gold states that "Unless an interlocutory appeal is filed, the matter will proceed before the Magistrate Judge on the award of attorneys fees and costs." Id. No such appeal was filed. **[D.E. 373]**.

Hearings on this matter were held before the undersigned on June 10, 2008 **[D.E. 375]**, and on September 3, 2008. **[D.E. 391]**.

Upon review of the record, the filings by the parties, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

---

[1] On April 9, 2008, United States Magistrate Judge Chris M. McAliley entered an Order of Recusal and Reassignment. **[D.E. 373]**. Pursuant to Administrative Order 2007-68, this cause was reassigned to the undersigned.

## Background

By way of summary,[2] Defendant Wolfgang Von Schlieffen ("Defendant") was charged[3] with conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846 (Count I) and possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841 (Count II) in December 1993. **[D.E. 131, 132]**. The Government's case was based in part on the testimony of a confidential informant ("CI"), Helmut Groebe. Id.

In May 1994, Defendant was convicted as to Count I, but was acquitted as to Count II **[D.E. 170]**. He was subsequently sentenced to ten years imprisonment **[D.E. 206]**.

Defendant appealed his conviction and sentence **[D.E. 208]**. While the appeal was pending, Defendant filed a motion for a new trial based on newly discovered entrapment evidence. **[D.E. 214, 228, 229]**. The basis for the motion was, among other things, (1) Defendant had learned (after trial) that Groebe was a paid CI who had an international reputation for lying [to governments] about the criminal activities of others; (2) the Government had deported another informant, Harry Pfiel, shortly before Defendant's trial because he refused to cooperate with Groebe by giving false testimony against Defendant; (3) the Government had failed to provide Defendant with *Brady* materials regarding Groebe's history and reputation for untruthfulness; and that (4) in obtaining an indictment against the Defendant, the Government had depended solely on the perjured testimony of the case agent, DEA Special Agent Lee Lucas.

---

[2] The following recitation of facts was taken from various court orders and other pleadings in the Court file. See **[D.E. 319, 353]**.

[3] Defendant was charged together with co-defendants Jerry Lee Smith and James Skief.

Specifically, Defendant alleged that an internal DEA memorandum, which was prepared by Lucas five months after the trial, confirmed that the Government had deported Pfiel at the request of Groebe, and described the activities of Groebe and Pfiel as "rogue actions."

The district court concluded that it did not have jurisdiction to rule on the motion. Shortly thereafter, the 11th Circuit relinquished jurisdiction to the district court for a ruling on the motion for new trial. **[DE 243]**.

Ultimately, the district court granted the motion and ordered a new trial. Outside the presence of the jury, the Court heard the testimony of Peter Mueller, a German investigative reporter. Mueller testified that in a 1995 audio-taped interview, Groebe stated that he had entrapped Defendant in this case while working for the DEA and the "BKA" – Bundeskriminalamt – the German equivalent of the FBI. See **[D.E. 353]**.

On July 21, 2000, the Court dismissed the indictment against Defendant, who had already served more than seven years of his sentence, as an appropriate sanction for the Government's unwillingness or inability to produce Pfiel and Groebe as material witnesses at Defendant's new trial **[D.E. 297]**.

Subsequently, Defendant filed a motion for attorney fees and costs **[D.E. 303]**, pursuant to the Hyde Amendment, 18 U.S.C. § 3006A, which provides for the reimbursement of attorney's fees and litigation expenses incurred by criminal defendants in certain instances. § 3006A shall be discussed in further detail below.

On May 28, 2003, the Hon. Wilkie D. Ferguson entered an order granting the motion for fees and costs, finding that the Government had: (1) failed to adequately research Groebe's background

before using him as a confidential CI; (2) failed to disclose *Brady* material favorable to Defendant, and (3) improperly deported Pfiel at Groebe's request because Pfiel's testimony would have helped Defendant and could have undermined the Government's case. See Order (May 20, 2003). **[D.E. 319]**. Judge Ferguson further found that the Government's failures constituted "bad faith," as defined in the Hyde Amendment. Id.

On August 14, 2003, after the death of Judge Ferguson, the case was transferred to the Honorable Alan S. Gold. The remaining issue of the amount of attorney's fees and costs to be reimbursed was referred to Magistrate Judge Andrea M. Simonton. **[D.E. 322]**. On September 5, 2003, the Government moved for reconsideration of Judge Ferguson's Order granting the motion for attorney fees and costs **[D.E. 326]**. This motion was also referred to Judge Simonton **[D.E. 327]**, but was never ruled upon due to Defendant's death on or around September 13, 2003. See **[D.E. 331]**. On January 25, 2008, Judge Gold granted a motion to substitute as to the Estate. **[D.E. 362]**. On March 19, 2008, Judge Gold entered an Order Denying the United States' Motion for Reconsideration. **[D.E. 370]**.

On April 9, 2008, this matter was transferred to the undersigned. **[D.E. 373]**. Accordingly, the determination of attorney's fees and costs is now before this Court.

### Hyde Amendment

The Hyde Amendment was enacted as part of Public Law 105-119, the Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, and is found at 18 U.S.C. § 3006A. It provides as follows,

> During the fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for

> by the public) pending on or after the date of the enactment of this Act [Nov. 26, 1997], *may award* to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses where *the court finds* that the position of the United States was *vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.*

See U.S. v. Gilbert, 198 F. 3d 1293 (11th Cir. 1999)(citing Pub. L. No. 105-119, 111 Stat. 2440, 2519 (1997)(reprinted in 18 U.S.C. § 3006A, historical and statutory notes))(emphasis added).

As noted *supra*, Judge Ferguson determined that the Government's failure to monitor the informants and its failure to disclose what it knew and had a duty to know about the informants, constituted bad faith under the Hyde Amendment. This finding was affirmed by Judge Gold in his Order Denying the United States' Motion for Reconsideration. See **[D.E. 370]** (noting that "Judge Ferguson made factual findings and credibility findings based on his presiding over the first criminal trial, the proceedings surrounding the motion for new trial, and the second criminal trial, at which he dismissed the indictment based on the Government's failure to bring the informants to Court to testify. I see no basis to disturb his findings or legal conclusions.").

## Analysis

The Estate is requesting reimbursement of attorney's fees and litigation expenses. The Estate is also requesting the application of a multiplier(of 3) to any award in light of the "special factors" involved in this case. The parties have agreed on many items, but the multiplier issue remains unresolved.

## Stipulation of the Parties

The parties have filed a Stipulation wherein they agree that **$356,824** constitutes "[a] reasonable attorney's [fee] and other litigation expenses for purposes of the Estate's claim under the Hyde Amendment." **[D.E. 392]**.

The $356,824 represents the following:

| Attorney | Amount |
|---|---|
| H. Gonzalez | $ 10,000 |
| J. White | 4,700 |
| J. Howes | 15,470 |
| M. Blacker | 26,413 |
| J. Gilbride | 51,472 |
| A. Genova | 2,000 |
| N. Lewis | 13,418 |
| P. Kyle | 5,000 |
| Broden & Mickelsen (underlying case) | 25,000 |
| Broden & Mickelson (Hyde Amendment) | 19,027 |
| Broden & Mickelson (Hyde Amendment work after June 30, 2008) | 4,992 |
| **Total Attorney's Fees:** | **$ 177,492** |

The agreed upon Litigation Expenses are as follows:

| Investigators | Amount |
|---|---|
| G. McDaniel | $173,258 |
| C. Fuentes | 6,074 |
| **Total Litigation Expenses:** | **$ 179,332** |

Upon review of the court file, the billing records, the pleadings and hearing argument from counsel, the undersigned finds that the agreed upon amounts are fair and reasonable. Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that the stipulated amount of **$356,824** representing attorney's fees and litigation expenses under the Hyde Amendment be **APPROVED AND ADOPTED**.

### Estate's Request for a Multiplier

The Estate contends that the use of a multiplier is justified under 28 U.S.C. §2412, also known as the Equal Access to Justice Act ( hereinafter "EAJA"). Specifically, the Estate argues that an enhancement is proper due to the existence of several "special factors." **[D.E. 383:9]**. On the other hand, the Government, already having stipulated to an award of fees under the Hyde Amendment, argues that there are no existing special factors in the present case that allow for award enhancement under the EAJA. **[D.E. 384:19]**. The undersigned agrees.

A Hyde Amendment award of attorney's fees and other litigation expenses is granted pursuant to the procedures and limitations provided in § 2412(d) of the EAJA. United States v. Aisenberg, 358 F. 3d 1327, 1342 (11 Cir. 2004). Once entitlement has been found under the Hyde Amendment, there is no existing precedent that prohibits nor that demands an award enhancement under the EAJA. Such an award is eligible for enhancement **only** where a court determines that an increase in the cost of living or "special factors" warrant its application. See 28 U.S.C. § 2412(d)(2)(A)(ii) (emphasis added). Here, there has been no argument as to the former, so this Report shall only address the latter, to wit: special factors.

7

The burden of showing the existence of a "special factor" is on the moving party. Although no litmus test exists for courts to determine what constitutes a special factor, relevant case law suggests it is a very narrow standard. See Aisenberg, 358 F. 3d at 1342.

In support of its request for a "special factor" finding, the Estate argues the following: (1) Defendant remained in custody while awaiting re-trial; (2) he died while the United States sought reconsideration of Judge Ferguson's ruling; and (3) unrelated third parties were adversely affected by D.E.A. Agent Lucas' actions once he was transferred to Cleveland, Ohio. See **[D.E. 383: 9-10]**. In short, the Estate argues that the Government acted in bad faith during, and subsequent to, the prosecution of Defendant. Each of these arguments shall be addressed in turn.

First, the Estate argues that an award enhancement is appropriate in "rare or exceptional cases." **[D.E. 383:8]** (citing Pennsylvania v. Delaware Valley Citizen's Counsel, 478 U.S. 546 (1986)). The Estate contends that this case is both "rare" and "exceptional" because, *inter alia*, the Government opposed Defendant's release on bond – pending his re-trial – in bad faith. **[D.E. 383:9]**. The Estate specifically argues that this fact constitutes a "special factor" because it required Defendant, unlike common EAJA award petitioners, to 'litigate his position from a prison cell'. Id. at 9. This argument does not persuade.

Under the Estate's logic, virtually any event that takes place in a case that **could** be considered rare or exceptional **would** allow for an award enhancement. In other words, any rare or exceptional event – no matter how inconsequential – occurring in a EAJA case would constitute a special factor. This logic is flawed.

First, there is no precedent supporting this argument. Indeed, the cases cited by the Estate themselves imply that the finding of a special factor is rare or exceptional. See e.g. Pennsylvania, 478 U.S. at 546; Jean v. Nelson, 863 F. 2d 759, 775 (11th Cir. 1988). The Estate's claim that a common EAJA claimant is out on bond or otherwise free while his case is pending likewise lacks support. Id. On the contrary, Defendant's continued confinement while awaiting re-trial can be viewed as a factor applicable to a broad spectrum of [criminal] litigation, and therefore not a "special factor." See Pierce v. Underwood, 487 U.S. 552, 573 (1988).

The Government correctly notes that much of the EAJA case law, as explained by the Eleventh Circuit, defines "special factor" by indicating what it is not. See Aisenberg, 358 F. 3d at 1343. For example, special factors in the context of § 2412 (d)(2)(A)(ii) do not include "[t]he novelty and difficulty of the issues, the undesirability of the case, the work and ability of counsel, and the results obtained." See Pierce v. Underwood, 487 U.S. 552, 573 (1988). Special factors also do not include "the motivations of the attorneys in bringing the case, the *pro bono* nature of the case, the fact that the litigation served to 'vindicate public rights.'" See Pollgreen v. Morris, 911 F. 2d 527, 537 (11th Cir. 1990). Likewise, "[a] delay that occurred because the government litigated a position that lacked substantial justification is not a permissible special factor because any litigation eligible for EAJA fees, by definition, involves the [g]overnment's pursuit of any unjustified position. Id. at 358. In other words, even if the Estate were to show the Government opposed Defendant's release in bad faith, same would not constitute a finding of a special factor. This is because a finding of bad faith is inherent in every Hyde Amendment award. Aisenberg, 358 F. 3d at 1343 n. 24 (discussing that a Jean analysis is improper when considering the existence of a special factor under the Hyde

9

Amendment, because under the lower Jean standard,[4] bad faith is an exception, whereas under the Hyde Amendment, bad faith is inherent).

It is highly unlikely that the legislature intended that a finding of bad faith could constitute a special factor in such a circumstance, because then every Hyde Amendment award would be subject to enhancement under the EAJA.

After careful consideration, the undersigned finds that the Government's opposition to bond and Defendant's continued incarceration do not constitute a special factor. A contrasting result would unnecessarily broaden a standard which, under Hyde Amendment and EAJA case-law, is designed to be very narrow. See e.g. Aisenberg, 358 F. Supp. 2d. 1327 at 1343.

The Estate's second argument is much like its first, in that it claims the Government took action against Defendant in bad faith when it timely filed a motion for reconsideration of Judge Ferguson's order granting attorney fees. In other words, the Estate claims that a special factor exists because Defendant was not afforded the ability to "personally see his position restored...". **[D.E. 383: 9]**. Defendant's death, claims the Estate, makes this case rare and exceptional, and worthy of a special factor finding. This argument likewise fails.

---

[4] Jean involved an application for attorney's fees under EAJA where fees are awarded when the government's position was "not substantially justified." See 28 U.S.C. § 2412(d)(1)(A). Under this standard, a case involving a vexatious or bad faith prosecution is an exception. The same cannot be said of a claim under the Hyde Amendment – where, by definition, there **must** have been vexatious or bad faith litigation. See Aisenberg, 358 F. Supp. 2d 1237 (discussing Jean v. Nelson, 863 F. 2d 759 (11th Cir. 1988)(emphasis added).

As explained above, even if the Estate were to show the Government's motion here was made in bad faith, this – without more – cannot constitute a special factor because a finding of bad faith is inherent in every Hyde Amendment award.

Further, the fact that Defendant died before he could "personally" realize his settlement award, likewise, fails to constitute a special factor. Again, the Estate fails to substantiate its claim that most all EAJA claimants live to spend their settlement award. [D.E. 383:9]. Even if the Estate were to show that the death of an EAJA claimant before he received his settlement award was rare or exceptional, this finding would not qualify as a special factor under the EAJA for reasons noted *supra*.

Death is obviously an unfortunate event. However, our legal system has well known and established practices, where upon death, a decedent's assets are transferred to his estate, and used to settle his accounts and otherwise comply with his wishes. In this sense, Defendant, through his estate, retained utility after death in an asset like a pending settlement award, because his passing did not decrease its monetary value to his loved ones.

Upon careful consideration, the undersigned finds that neither the Government's motion to reconsider, nor the death of Defendant before receiving his settlement award, constitute a special factor under the EAJA.

Third, the Estate argues a special factor exists because the Government transferred Agent Lucas to Ohio, where his actions had adverse impacts on third parties. [D.E. 383:9]. The reality is that these third parties were, and are, in no way connected, and have no relevance to, Defendant's particular case. The Estate essentially argues that because the Government did not properly sanction

11

Agent Lucas after his role in this case, Defendant is entitled to a multiplier because Lucas' acts in Ohio were done in bad faith. In effect, by submitting this argument, the Estate is seeking punitive damages, which the EAJA simply does not authorize. Nor does the EAJA permit a special factor to be "the fact that the litigation served to 'vindicate public rights'." Pollgreen v. Morris, 911 F. 2d 527, 537 (11 Cir. 1990) (internal citation omitted).

The Government correctly notes that a finding of bad faith and award of attorney's fees under the Hyde Amendment is a severe and serious consequence, and for this reason, such a finding must turn on the facts of the particular case at issue, not on other cases in other districts. Accordingly, consistent with the above and foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Estate's request for a multiplier be **DENIED**.

### Joint and Several Liability

The parties agree that any award should be assessed in full against the Department of Justice. The undersigned agrees. Accordingly, it is **RESPECTFULLY RECOMMENDED** that the allocation of payment between the DEA and the U.S. Attorney's Office for the Southern District of Florida be determined by the Department of Justice.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections with the Honorable Alan S. Gold, United States District Judge, within ten (10) days of being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir. 1993); Lo Conte v. Dugger, 847 F. 2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 3rd day of December 2008.

_____
WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Alan S. Gold
  Counsel of Record